A03A1211. BUTGEREIT et al. v. ENVIRO-TECH
ENVIRONMENTAL SERVICES, INC. et al.
(586 SE2d 430)

BLACKBURN, Presiding Judge.

Following a jury verdict in favor of Enviro-Tech Environmental Services, Inc. ("Enviro-Tech") and Jarrod Thomas Ramsey in this action for personal injury and loss of consortium, Frances and John Butgereit appeal, arguing that the trial court erred in: (1) denying their motions for partial directed verdict and judgment notwithstanding the verdict or, in the alternative, motion for new trial on the issue of appellees' negligence and negligence per se; (2) instructing the jury on sudden emergency; (3) permitting highly prejudicial and inflammatory evidence; and (4) permitting the appellees' expert to testify at trial. For the reasons set forth below, we reverse.

On April 6, 1999, there was a multiple vehicle pileup on I-285.

Frances Butgereit suffered serious injuries when her vehicle was struck from behind by a truck driven by Ramsey, an employee of Enviro-Tech, and also struck a tractor-trailer in front of her.

DeKalb County police cited Ramsey for causing the accident by following too closely, in violation of OCGA § 40-6-49. Ramsey pled guilty to the citation by forfeiting his bond and paying an $80 fine.

1. The Butgereits argue that the trial court erred in denying their motions for partial directed verdict and j.n.o.v. or, in the alternative, motion for new trial on the issue of appellees' negligence and negligence per se. Specifically, the Butgereits maintain that Ramsey's failure to appear in court to contest the traffic violation for which he was cited constituted an admission of negligence per se and that this admission of negligence is conclusive in this case because it was unrebutted by the appellees. We agree.

It is undisputed that Ramsey was cited for violating OCGA § 40-6-49, and he admitted that he failed to appear to contest the citation at the designated time and place. "Under such circumstances, 'plaintiff has established negligence per se in the violation of a statute, which is a prima facie showing of negligence.' " *Roberts v. Ledbetter*.[1] Thus, Ramsey's failure to contest the traffic violation amounts to an admission that he was following Butgereit too closely and thus participated in the circumstances which caused the collision.

"In a civil case this admission of guilt is conclusive if unrebutted, but the defendant can present evidence that he was not negligent despite the plea, and the jury can choose to agree." *Coleman v. Fortner*.[2] To rebut the prima facie showing of negligence, "the burden is on the defendant[ ] to show that the violation was unintentional and in the exercise of ordinary care." (Punctuation omitted.) *Roberts*, supra. In this case, Ramsey violated OCGA § 40-6-49 (a), which provides that a "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Thus, to rebut the presumption that he was following too closely, Ramsey was required to present sufficient competent evidence that he was following Butgereit at a reasonable and prudent distance, and that he was traveling at a speed that was reasonable and prudent given the traffic ahead of him, the speed of that traffic, and the condition of the highway.

Ramsey testified that he was traveling at approximately 50-55 mph, that the road was wet, that he and Butgereit hit their brakes at the same time, that he was not sure if he was skidding or hydroplan-

---

[1] *Roberts v. Ledbetter*, 218 Ga. App. 860 (1) (463 SE2d 533) (1995).

[2] *Coleman v. Fortner*, 260 Ga. App. 373, 375 (1) (a) (579 SE2d 792) (2003).

ing, that he was also struck from behind by a vehicle, and that the accident happened so fast that it seemed like "just one big collision." This evidence, while describing some of the circumstances of the accident, does not show either that Ramsey was traveling at a reasonable speed under the conditions or that he was following Butgereit at a safe distance. Indeed, some of this testimony could be taken as evidence that Ramsey was not exercising due care to ensure that he was following traffic at a reasonable speed and distance.

Ramsey also testified that he was not following Butgereit too closely and that he did not feel he was guilty of violating the traffic statute. "Such conclusory statements are not proof." *Gibson v. State*.[3]

Finally, Ramsey attempted to rebut this admission of following too closely by explaining at trial that he decided not to go to court to fight the citation because his first wedding anniversary was on the day before the court date and that he and his wife, who was nine months pregnant, had made plans to go out of town before the birth of their child. This testimony, while explaining his reason for not going to court, does nothing "to show that the violation was unintentional and in the exercise of ordinary care," or, more specifically, that he was following Butgereit at a reasonable and prudent distance while traveling at a reasonable and prudent speed given the traffic and road conditions.

It is clear that Ramsey's negligence per se remained unrebutted and a prima facie showing that his actions were a cause of the collision in which Butgereit was injured was made. It follows, then, that the trial court erred in denying the Butgereits a directed verdict on the issue of appellees' negligence.

2. In their second enumeration of error, the Butgereits argue that the trial court erred in denying their motion for new trial because it improperly instructed the jury on sudden emergency. "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." *Epps v. Hin*.[4]

We agree with the Butgereits that the evidence did not support a charge on sudden emergency. "An emergency is a sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought so that negligence in his choice might be attributable not to lack of care but to lack of time to assess the situation." (Punctuation and emphasis omitted.) *F. A. F. Motor Cars v. Childers*.[5] We conclude that Ram-

[3] *Gibson v. State*, 239 Ga. App. 572 (a) (521 SE2d 599) (1999).
[4] *Epps v. Hin*, 255 Ga. App. 370, 371 (565 SE2d 577) (2002).
[5] *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 822-823 (3) (b) (354 SE2d 6) (1987).

sey fails to meet either of the requirements for application of the sudden emergency doctrine.

First, it is clear that any sudden peril that occurred was caused by circumstances in which Ramsey, as a matter of law, participated. As explained above, the Butgereits established Ramsey's negligence per se in the violation of the statute and this prima facie showing of negligence was unrebutted. Ramsey's negligence created the emergency situation in which he found himself. One who creates an emergency cannot excuse himself because of its existence. *Gray v. Alterman Real Estate Corp.*[6]

Second, there is no evidence that Ramsey had any real choice of conduct open to him at the time of the collision.

> The defense of sudden emergency applies only to those acts that occur immediately after the apprehension of the danger or crisis. The defense is not available unless the evidence shows that the sudden peril offered the defendant a choice of conduct without time for thought, so that any negligence in the defendant's choice may be attributed to lack of time to assess the situation rather than lack of due care. The doctrine requires that the person confronted by the emergency have the opportunity to exercise one of several reasonable alternative courses of action. In the absence of such factors, there can be no conduct to which to apply the standard and the doctrine is inapplicable.

(Punctuation and footnotes omitted.) *Rayfield v. Farris.*[7]

At trial, Ramsey testified that the collision in which he and Butgereit were involved "happened so fast" that it was "kind of a blur." In describing what happened, Ramsey stated: "Traffic started slowing, I saw the tractor-trailer truck in front of Ms. Butgereit slow. She hit her brakes, I hit my brakes. Then just one big collision." Ramsey did not contend that he had a choice between attempting to stop and taking some other action, nor did he testify that he considered any course of conduct other than braking. *Davis v. Calhoun.*[8] On the other hand, Ramsey did testify that the pavement was wet, that he was not driving too close behind Butgereit, and that when Butgereit started to brake, he could not stop before he hit her. In short, "[t]he real thrust of his argument was not that he made an emergency choice when confronted by a sudden danger, but rather that he was not negligent in any particular and the collision, as to him, was an

---

[6] *Gray v. Alterman Real Estate Corp.*, 196 Ga. App. 239, 240 (396 SE2d 42) (1990).
[7] *Rayfield v. Farris*, 253 Ga. App. 167, 168 (558 SE2d 748) (2002).
[8] *Davis v. Calhoun*, 128 Ga. App. 104, 107 (195 SE2d 759) (1973).

accident or due to the negligence of others." Id. Under these circumstances, we find that the charge on sudden emergency was given in error because under the evidence there was no real choice of conduct open to the defendant after he realized the situation which would make the doctrine of sudden emergency applicable. *Thomas v. Stairs*.[9] "Accordingly, it was error for the trial court to give the sudden emergency charge. The instruction gave the defendant a defense to which he was not entitled, and the error was therefore not harmless." Id.

Appellees maintain that the Butgereits waived their objection to the sudden emergency charge because, at trial, they objected to the charge solely on the basis that it was inapplicable to the facts of the case and never objected on the ground that there was no evidence of a choice of conduct for Ramsey. A review of the trial transcript shows that the Butgereits objected and excepted to the giving of the charge on emergency "as not suited to both the facts and evidence entered in this case or an accurate statement of the law." In light of our finding that the evidence did not support a charge on sudden emergency, this objection was clearly sufficient to preserve the issue for appellate review.

3. The Butgereits also contend that the trial court erred in allowing the introduction of evidence of Frances Butgereit's liver disease because such inflammatory and irrelevant evidence permitted inferences of alcohol abuse, biased the jury, and prejudiced the Butgereits.

> The admission of evidence is a matter resting largely within the sound discretion of the trial court, and appellate courts will not interfere absent an abuse of discretion. Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.

(Citation and punctuation omitted.) *Robert Stovall Family, L.P. v. Carroll County Water Auth.*[10] We have reviewed the record and conclude that, under the facts of this case, the trial court did not abuse

---

[9] *Thomas v. Stairs*, 215 Ga. App. 288, 290 (1) (450 SE2d 326) (1994).
[10] *Robert Stovall Family, L.P. v. Carroll County Water Auth.*, 255 Ga. App. 223, 224 (564 SE2d 763) (2002).

its discretion in admitting evidence of Frances Butgereit's liver disease, as it was relevant to her life expectancy. Our review of the record also indicates that the trial court did not instruct the jury that it should limit its consideration of Butgereit's liver disease to the issue of future damages based on her life expectancy, as no request for such charge was made. The better practice would have been for the trial court to charge the jury that her liver disease was not relevant to any issue in the case except that of her life expectancy and damages based thereon.

4. Finally, the Butgereits argue that the trial court erred in admitting the testimony of appellees' expert witness, asserting that he failed to thoroughly investigate the vehicles and the accident site, and that his testimony added nothing of relevance to the issues. If the appellees' expert's "opinion was based upon inadequate knowledge, this 'does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion.' " *J. B. Hunt Transport v. Brown*.[11] The trial court did not err in this ruling.

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED AUGUST 14, 2003 — 

*Sutherland, Asbill & Brennan, William D. Barwick, Brian D. Burgoon, Jackie L. Volk*, for appellants.

*Gray, Hedrick & Edenfield, William E. Gray II, Stacey K. Hydrick*, for appellees.

---

[11] *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 635 (1) (a) (512 SE2d 34) (1999).